IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| SANDY MARTINEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:15-CV-259 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

### REPORT AND RECOMMENDATION
### TO REVERSE DECISION OF THE COMMISSIONER and
### REMAND FOR FURTHER PROCEEDINGS

Plaintiff SANDY MARTINEZ brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant CAROLYN W. COLVIN, Acting Commissioner of Social Security (Commissioner), denying plaintiff's application for disability insurance benefits (DIB). For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be REVERSED.

### I.
### THE RECORD

Plaintiff SANDY MARTINEZ filled an application for Disability Insurance Benefits on May 10, 2012, alleging a disability onset date of March 2, 2012, as a result of diabetes, a right knee replacement, a left knee injury, and dislocated disc in the lower back. (Tr. 8, 99). Plaintiff's claim was denied on October 29, 2012 and reconsideration was denied on February 11, 2013. A hearing was held on December 5, 2013, before Administrative Law Judge Herbert J. Green. (Tr. 20–31). The ALJ

issued an unfavorable decision on March 7, 2014, finding plaintiff not disabled. (Tr. 8–16). The ALJ found plaintiff had the following impairments: obesity; advanced osteoarthritis status post total knee arthroplasty, bilateral knees; and type 2 diabetes mellitus. (Tr. 10). He determined none of plaintiff's impairments met or equaled the severity of a listed impairment. (Tr. 11). The ALJ next evaluated her RFC, reaching the conclusion she was able to perform "light work as defined by 20 CFR 404.1567(b) except she can sit or stand at her option; cannot climb, crawl, kneel, or squat; can occasionally stoop and crouch; and can understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in a routine work setting. . . . and perform said residual functional capacity for a sustained basis, i.e. for a 40-hour workweek, for an indefinite period of time." (*Id.*). The ALJ found she was unable to perform her past relevant work but determined there were jobs in significant numbers in the national economy that plaintiff could perform. (*Id.*). Specifically, based on the testimony of the Vocational Expert (VE), the ALJ concluded that plaintiff could perform jobs such as a parking lot cashier, small products assembler, and folding machine feeder. (Tr. 15).

In his decision, the ALJ summarized plaintiff's testimony at the hearing as follows:

At the hearing, the claimant testified as follows. She is 5'3" and weighs 252 pounds. She cannot stand in certain positions for more than 5-10 minutes. She cannot sit for more than one hour before standing due to her back. She cannot kneel or squat. She cannot lift heavy items. She cannot bathe herself. She gets tired and out of breath. She cannot do the things she used to. She uses a walking chair a little at the end of the day. The doctor said all he can do is give her medication for pain and diabetes. She takes meloxicam and naproxen for pain. She lives with her mother and her daughter. She cooks breakfast from a chair by the stove. She tries to vacuum. She tries to pick up and make her bed. She tries to do laundry but cannot go up and down the steps or fold laundry. She does not go anywhere during the day due to lack of funds. She goes to church for one hour on Saturday. She cannot kneel at church and she has to hold onto the pews while walking to the front for the church for the Eucharist. She had both knees replaced. She takes Actos and metformin as prescribed. Her blood sugars run 240-300. She is having trouble adjusting to a medication change after surgery. Her vision is blurred and her sugars are not controlled. She went to the emergency room

when her sugars were 609. She cannot get comfortable enough to sleep at night. Her mother takes her grocery shopping. She drops her off at the door and she uses an electric cart because she gets tired of walking.

(Tr. 12).

The medical record shows the following:

In January 2010, plaintiff was seen by Steven Rossi, M.D., who noted a history of bilateral osteoarthritis for which she had received steroid and Synvisc injections with no improvement. (Tr. 241). Plaintiff was concerned about fluid buildup in her leg, but Dr. Rossi felt it was adipose tissue. (*Id.*). Dr. Rossi recommended weight loss and exercise. (*Id.*).

On January 18, 2010, plaintiff received a steroid injection and was warned it might create side effects related to her diabetes. (Tr. 238).

On April 3, 2012, plaintiff was seen by Gurdev Gill, M.D, and underwent a total right knee replacement. While it is likely that plaintiff was examined by Dr. Gill prior to the day her knee replacement was performed, there are no records in the transcript to reflect such. Dr. Gill noted she was "barely able to hobble about," and she swayed from side-to-side when taking a few steps. (Tr. 152). He noted her x-rays showed advanced osteoarthritis with complete absence of joint space in the medial and patellofemoral compartments and three degrees genu varus deformity. (*Id.*). Plaintiff reported receiving numerous cortisone shots in both knees for two years as well as the Synvisc injections. (Tr. 151). Meloxicam and naproxen did not relieve the pain. (Tr. 151). She stated she had attempted weight loss but could not walk to exercise. (*Id.*). Dr. Gill then performed a total right knee replacement. (Tr. 149).

Following her surgery, Hima Ravi, M.D. referred her to physical and occupational therapy. (Tr. 154). In early June 2012, Dr. Gill noted plaintiff was still using a walker due to her left knee and that she was barley able to ambulate even with the walker. (Tr. 204). He

noted plaintiff had no weight-bearing pain in her right knee but needed to continue to improve her range of motion through exercises. (*Id.*). Three days later on June 8, 2012, Dr. Gill performed a total left knee replacement. (Tr. 202).

About one month post-op, plaintiff requested a shower chair and wanted to begin physical therapy, which was approved by Dr. Rossi. (Tr. 236). He noted her incisions were healing well. (*Id.*).

On July 11, 2012, Scott Dyer, P.T. completed a physical therapy evaluation on plaintiff. (Tr. 266). Plaintiff stated she had more pain following the left-knee surgery than the right-knee surgery, she could stand for 5 minutes, and walk about 200 feet before needing to rest. (*Id.*). Dyer recommended plaintiff receive physical therapy three times per week to increase range of motion, strength, and balance. (Tr. 267). Plaintiff attended physical therapy sessions from July to September 2012. (Tr. 268–72). The physical therapy notes indicate slow improvement. (*Id.*).

On September 26, 2012, Martinez was seen by Dr. Rossi. (Tr. 273). She reported bilateral pain in her knees, despite having attended physical therapy, exercising, and dieting. (*Id.*). Dr. Rossi noted her incisions were healing well and that plaintiff appeared to have pain in her soft tissue rather than in the actual knee joints. (Tr. 274). He noted there was no knee crepitance, with no erythema to the knees or thighs. (*Id.*). He noted significant adipose tissue on her thighs and recommended continued diet and exercise and potentially gastric bypass surgery. (*Id.*).

On October 3, 2013, plaintiff was seen by Raghabendra Saralaya, M.D., who noted plaintiff had 4+/5 motor strength with no focal weakness, a broad-based gait to due to massive obesity but could walk straight, and inability to tandem walk due to obesity. (Tr. 279–80).

Plaintiff had normal knee extension and flexion to 90 degrees. (Tr. 280). She had limited range of motion in the hips with straight leg raising of 20 degrees active and 79 degrees passive. (*Id.*). X-rays of her right knee showed status post total knee arthroplasty with no abnormalities detected. (Tr. 277). X-rays of her lumbosacral spine were normal and showed no narrowing of the intervertebral disk spaces and no spondylolisthesis. (Tr. 278).

On October 23, 2012, plaintiff was seen in the ER with blood sugar levels over 600 and associated symptoms. (Tr. 312).

On October 26, 2012, medical consultant, San-San Yu, M.D. completed a Physical Residual Functional Capacity Assessment. (Tr. 282–89). Pertinent to the case before the Court, Dr. Yu found plaintiff could stand and/or walk with normal breaks for a total of two hours in an eight-hour work day, and could sit with normal breaks for about six hours in an eight-hour work day. (*Id.*). He specifically noted she could stand/walk for a total of 4 hours combined. (*Id.*). In his notes, he stated, "medical improvement is expected in a year. The alleged limitations are partially supported." (Tr. 289).

On February 11, 2013, another medical consultant, Leigh McCary, M.D. completed a Physical Residual Functional Capacity Assessment. (Tr. 290–297). Dr. McCary found plaintiff could stand and/or walk with normal breaks for a total of two hours in an eight-hour work day, and could sit with normal breaks for about six hours in an eight-hour work day. (Tr. 291). She specifically noted the "s/w 2 hours," indicating plaintiff was limited to two hours total of standing/walking. (*Id.*).

Upon the Appeals Council's denial of plaintiff's request for review on January 25, 2012, the ALJ's determination that plaintiff was not under a disability during the relevant time period became the final decision of the Commissioner. (Tr. 1-3). Plaintiff now seeks judicial review

of the denial of benefits pursuant to 42 U.S.C. § 405(g).

## II.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings, and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). To determine whether substantial evidence of disability exists, the following elements must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. The fact that the ALJ *could* have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being

limited to whether there was substantial evidence to support the ALJ's decision.

III.
ISSUES

Plaintiff raises two grounds for reversal of the acting Commissioner's decision denying plaintiff Social Security disability benefits:

1. The RFC determination is not supported by substantial evidence because the ALJ failed to provide adequate explanation for rejecting the opinion from the most recent State Agency medical consultant, who opined sedentary work.
2. The credibility determination is not supported by substantial evidence.

IV.
MERITS

A. *The RFC Determination*

The ALJ determined that plaintiff was able to perform "light work as defined by 20 CFR 404.1567(b) except she can sit or stand at her option; cannot climb, crawl, kneel, or squat; can occasionally stoop and crouch; and can understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions, and respond appropriately to changes in a routine work setting. . . . and perform said residual functional capacity for a sustained basis, i.e. for a 40-hour workweek, for an indefinite period of time." (Tr. 11).

In arriving at this determination, the ALJ stated:

"As for the opinion evidence, I have given some weight to the State agency opinions regarding claimant's residual functional capacity, insofar as the opinions are consistent with a finding that the claimant is not disabled. . . . However, evidence received at the hearing level, including the claimant's testimony and the updated medical evidence, support the above residual functional capacity, including the limitation to detailed but not complex instructions.
. . .
In so finding, I have considered all of the claimant's complaints, including pain, tiredness,

shortness of breath, and physical limitations, and I have limited her to light work with the freedom to alternate positions as needed for comfort, to avoid most postural maneuvers, and to only occasional stooping and crouching. . . . The evidence fails to support a conclusion that the claimant has any additional functional limitations as a result of her medically determinable impairments, including limitations that would reduce her residual functional capacity to less than sedentary."

(Tr. 14).

Plaintiff argues the ALJ failed to adequately explain why he rejected the state agency medical consultant's opinion that plaintiff could only do sedentary work. (Pl.'s Br. at 9). Specifically, plaintiff points to the opinions of Dr. Yu and Dr. McCary, who both rendered opinions on plaintiff's residual functional capacity. Pertinent to this argument, Dr. Yu found plaintiff could stand or walk for at least two hours (which he qualified in written notes as allowing four hours of standing/walking in total), and Dr. McCary opined that plaintiff could stand or walk for only two hours in a work day. (Tr. 283, 291).

Plaintiff points to the regulatory definition of light work being work that involves an individual being on his or her feet with the ability to lift and carry objects for two-thirds of the workday, meaning approximately six hours in an eight hours day. (Pl.'s Br. at 10 (citing SSR 83-10)). Both Dr. McCary and Dr. Yu noted plaintiff's functioning somewhere below this range. (Tr. 283, 291). The ALJ found that plaintiff could "perform light work as defined in 20 C.F.R. § 404.1567(b)," which indicates a "good deal of walking or standing" is required." (Tr. 11, 20 C.F.R. § 404.1567(b)). While the ALJ did provide additional limitations, none of these limitations change the amount of walking or standing permitted. The ALJ's RFC and discussion in his decision do not state precisely how many hours he determined plaintiff could stand and walk and do not state she was capable of more than four hours of standing/walking or cite any medical evidence or opinion to that effect. The

only accommodation related to this limitation was she could change her position from sitting to standing at her option. In reaching that determination, the ALJ did not explain why he rejected Dr. Yu and Dr. McCary's limitation on the total time standing or walking. The ALJ referenced the testimony and additional medical evidence at the hearing as a basis for not fully accepting the opinions of the state agency consultants (Tr. 14), but the only additional record evidence was from Swisher Memorial Hospital, which involved treatment for epigastric symptoms, treatment of high blood glucose levels, and laboratory results. (Tr. 298—319). None of the information contained in the additional medical records was pertinent to the RFC generally or specifically to plaintiff's ability to stand/walk and would not provide a basis for excluding limitations found by the consulting physicians. The ALJ did not specify and the Court cannot point to anything in plaintiff's testimony that would support an exclusion of the limitation on total number of hours plaintiff can stand or walk.

The Commissioner argues the ALJ properly relied on the State Agency physicians who "are experts in the Social Security disability program." (Def.'s Br. at 5). It further argues that the ALJ did not reject the standing/walking limitations contained in the opinions of Dr. Yu and Dr. McCary because they were incorporated into the hypothetical posed to the VE. (Def.'s Br. at 6). While the Commissioner is correct that alternating between sitting and standing is a "prevalent accommodation," permitting the plaintiff to change from a sitting to standing position at her will, it does not limit her total standing/walking time as was recommended by both State Agency physicians, and which was not contradicted by any other medical opinion. At the very least, the ALJ should have incorporated the additional total time limit on standing/walking into a hypothetical for the VE to clarify the effect, if any, it would have on the occupational base and available jobs.

While the ALJ's decision must be affirmed if it is supported by substantial evidence, this Court must reverse when the ALJ substitutes his own opinion for the medical opinion evidence without a sufficient explanation of why the medical opinion is being discounted. "Unless a treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to opinions of a State Agency medical or psychological consultant. . . . " 20 C.F.R. § 404.1527(e)(2)(ii). The ALJ's decision "must stand or fall with the reasons set forth in the ALJ's decision," and this court may not supply additional reasons or rationale to attempt to validate the ALJ's decision. *See Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

Here, the ALJ neither gave weight to the only medical evidence in the record related to plaintiff's ability to walk or stand for the amount of time required to be capable of light work nor did he provide an adequate explanation of why the medical opinions were discounted. It is unclear why the ALJ did not include a total time limitation on standing/walking in his hypothetical to the VE or in his RFC. This is not a situation where the ALJ placed more weight on the medical opinion of one physician over another; instead, this is a case where no medical evidence contradicted the total time limitation and the ALJ rejected it without explanation. This distinction in limitations could have a significant effect on the testimony of the VE, and it was harmful error for the ALJ to not address why he excluded the total time standing/walking limitation without adequate explanation. Stated differently, the sit/stand option does not equal a finding that the light work jobs identified would require only two (or four) hours total per day of standing and/or walking.

Accordingly, no substantial evidence supports the ALJ's RFC. The undersigned recommends this case be reversed and remanded for further administrative proceedings

consistent with this decision.

## B. *The Credibility Determination*

When the uncontroverted medical evidence demonstrates a basis for claimant's subjective complaints, "the ALJ's unfavorable credibility determination will not be upheld unless the ALJ weighs the objective medical evidence and assigns articulated reasons for discrediting the claimant's subjective complaints of pain." *Wilson v. Barnhart*, 129 F. App'x 912, 914 (5th Cir. 2005). While "[a]n ALJ 'is bound to explain his reasons for rejecting a claimant's [subjective complaints],' he is not required to 'follow formalistic rules in his articulation.'" *Hernandez v. Astrue*, 278 F. App'x 333, 339 (5th Cir. 2008).

The ALJ found that plaintiff's "medically determinable impairments could be reasonably expected to cause some of her alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in this opinion." (Tr. 13).

The ALJ's decision does not articulate specific reasons for discrediting plaintiff's testimony regarding the intensity, persistence, and limiting effects. While the ALJ is not required to follow formalistic rules in articulating his reasoning in his credibility determination, he must articulate something. Here, the ALJ simply pointed to the entire decision without indicating what evidence he found to be in contradiction to plaintiff's testimony. The ALJ's credibility determination may have been well-reasoned, but it is impossible for the Court to know what substantial evidence supported his determination when the ALJ failed to articulate any specific reasoning or analysis of the factors in 20 C.F.R. § 404.1529(c)(3).

The undersigned recommends the case be reversed and remanded for further

proceedings consistent with this opinion.

## V.
## RECOMMENDATION

It is the RECOMMENDATION of the undersigned United States Magistrate Judge to the United States District Judge that the decision of the defendant Commissioner finding plaintiff SANDY MARTINEZ not disabled and not entitled to a period of disability benefits be REVERSED and the case REMANDED for further proceedings consistent with this Report and Recommendation.

## VI.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this _9th_ day of September 2016.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

      Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. Petitioner. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. Petitioner. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. Petitioner. 72(b)(2); *see also* Fed. R. Civ.

Petitioner. 6(defendant).

      Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).